UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

                Plaintiff,

v.                                          Case No. 25-cv-1110-pp

SGT. NELSON, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

       Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On September 23, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $0.81. Dkt. No. 9. The court received that fee on October 9, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court will require the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Sergeant Nelson; Lieutenants Collins and Griperton; Restricted Housing Unit (RHU) Manager Kirst; Correctional Officers Martin, Thill and Bloomberg;[1] and Security Director Jeremy Beck. Dkt. No. 1 at ¶¶D–K. All defendants work at Waupun, and the plaintiff sues them in their individual capacities. Id.

The plaintiff alleges that in the morning on April 21, 2025, Officer Thill was escorting him back to his cell in the RHU (restricted housing unit). Id. at ¶L. Thill notified the plaintiff that he was being placed on a paper and clothing restriction and that Sergeant Nelson had confiscated the plaintiff's legal work. Id. The plaintiff asked to speak with Nelson because he had an upcoming court deadline, and Thill allowed the plaintiff to wait for Nelson while handcuffed to the door of his cell. Id. The plaintiff alleges that Nelson arrived at his cell and

---

[1] The complaint initially refers this defendant as Officer "Bloomber," but it otherwise uses the name Bloomberg. The court will use the latter in this order.

"came up to him in a very aggres[s]ive manner." Id. He alleges that instead of listening to the plaintiff, Nelson "snatched the Court order he had out of his hand's [*sic*] and stated really loud, 'I don't care u F-ing n[*****], we're tired of u suing us anyway.'" Id. The plaintiff says that Nelson then "flinched" at the plaintiff "as if he was gona [*sic*] 'swing at him.'" Id. He says that Nelson then realized that the hallway camera was recording, and he "would've gotten caught." Id. He alleges that Nelson instead went into the plaintiff's cell, grabbed him from behind by the neck and twisted sideways three or four times "in his attempt to break [the plaintiff's] neck all while wearing his body camera." Id.

The plaintiff alleges that he screamed out in pain and told Nelson "that he was trying to break [the plaintiff's] neck." Id. at ¶M. Nelson allegedly responded by telling the plaintiff to stop resisting. Id. The plaintiff denies that he ever resisted. Id. He says that Officers Thill, Martin and Bloomberg and Lieutenant Collins arrived at his cell and "beg[a]n to brutally assault the plaintiff" by kicking and punching him "as he laid on the ground helpless, waiting for this vicious assault to stop." Id.

The plaintiff alleges that after the assault, the officers forcibly removed him from his cell, tied him to a chair and escorted him to a strip cage. Id. at ¶N. He says that defendants Griperton and Kirst joined the other officers in the RHU office with another non-defendant officer. Id. The plaintiff says that the non-defendant officer witnessed Nelson tell Griperton "how he had just attempted to break the plaintiff's neck," and Griperton responded, "Nice." Id. The plaintiff says that "all defendants high fiv[ed] each other afterward's [*sic*]." Id. The plaintiff says that he wrote numerous requests to Security Director Beck asking him to investigate Nelson and have him arrested for the alleged assault. Id. at ¶O. He says that Beck ignored his requests. Id.

The plaintiff claims that defendants Nelson, Collins, Martin, Thill and Bloomberg used excessive force for the purpose of causing him injury or "even death." Id. at ¶Q. He says that Nelson's alleged statement and racist epithet toward the plaintiff amounted to retaliation in violation of the plaintiff's First Amendment rights. Id. at ¶R. The plaintiff claims that Griperton and Kirst were Nelson's supervisors, but that they failed to intervene to stop the assault and instead "decided to join in the conspiracy against the plaintiff" by approving of Nelson's use of force by commenting "nice job" and high-fiving Nelson and the other officers. Id. at ¶S. The plaintiff seeks compensatory and punitive damages against all defendants. Id. at p.8.

    C.    <u>Analysis</u>

The court analyzes the plaintiff's allegations about the officers' use of excessive force under the Eighth Amendment, which protects incarcerated persons from cruel and unusual punishments. See Jones v. Anderson, 116 F.4th 669, 677 (7th Cir. 2024) (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)). An Eighth Amendment claim consists of an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a claim of excessive force, plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 303 (1991)). The primary question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320–21 (1986).

The plaintiff alleges that when the plaintiff asked to discuss his paper restriction, Sergeant Nelson attacked him without warning or reason. He says

that he did not resist orders from Nelson, who attempted to break his neck. He alleges that Officers Thill, Martin and Bloomberg and Lieutenant Collins joined the attack on him, even though by then he was on the ground and helpless. He says that the officers then tied him to a restraint chair and took him to a strip-cage cell. The plaintiff alleges that at least Nelson was wearing a body camera, and he says that the hallway camera may have captured some of these events.

These allegations are difficult to believe. It would be shocking for a sergeant to spontaneously attack an incarcerated person and attempt to break his neck while wearing a recording body camera, and for four other officers to witness this and join in, helping the sergeant harm and even attempt to kill the incarcerated person. But at this early stage of the proceedings, the court must accept the plaintiff's allegations as true, as long as they are not "clearly baseless," "fanciful," "fantastic," "delusional," "irrational" or "wholly incredible." Felton v. City of Chicago, 827 F.3d 632, 635 (7th Cir. 2016) (quoting Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). The allegations in the complaint may be hard to believe, but the court cannot find that they are frivolous or wholly incredible. Taking them as true for purposes of this order, the court finds that the plaintiff ha stated an Eighth Amendment claim against defendants Nelson, Thill, Martin, Bloomberg and Collins.

The plaintiff will need to support his claims with evidence showing that the officers brutally attacked him for no reason. If the evidence instead shows that the plaintiff's claims are undeniably false, so that no reasonable jury could believe them, the court has the authority to impose sanctions on the plaintiff—including dismissal of this lawsuit—for filing a frivolous, malicious and/or fraudulent lawsuit against the officers. See Sanders v. Melvin, 25 F.4th 475,

6

Case 2:25-cv-01110-PP    Filed 11/20/25    Page 6 of 10    Document 12

481 (7th Cir. 2022) (citing Ayoubi v. Dart, 640 F. App'x 524, 528–29 (7th Cir. 2016)).

The plaintiff also alleges that Nelson retaliated against him by attacking him after Nelson stated that he was tired of the plaintiff's complaints and by calling the plaintiff by a racist epithet. To state a First Amendment claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783). The plaintiff's earlier complaints are protected conduct, see Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020), and his allegations that Nelson yelled at him and attacked him because of those earlier complaints satisfy the other elements of a First Amendment claim. Although these allegations are thin, the court finds that they are sufficient to proceed on a claim of retaliation against defendant Nelson.

The complaint does not state a claim against any other defendant. The plaintiff alleges that Lieutenant Griperton and Unit Manager Kirst "joined the conspiracy" against him when they congratulated and high-fived the other officers after the assault. He also says that they failed to intervene and stop the assault. But the complaint alleges that Nelson spontaneously attacked the plaintiff at his cell. It does not allege that Griperton and Kirst knew that Nelson was going to attack the plaintiff, that they joined in on the attack or that they were nearby and "had a realistic opportunity to intervene to prevent the act from occurring." Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009) (citing Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir. 2001), and Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005)). Griperton and Kirst cannot be

held liable for acknowledging the assault *after* it concluded and after the officers brought the plaintiff to the strip cell because by then there was nothing they could do to stop it. See Phillips v. Mega Concrete Constr., LLC, Case No. 20-CV-658, 2022 WL 252100, at *8 (W.D. Wis. Jan. 27, 2022) (citing Nanda v. Moss, 412 F.3d 836, 842–43 (7th Cir. 2005); and George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). The court will dismiss defendants Griperton and Kirst.

The plaintiff also has not stated a claim against Security Director Beck. The plaintiff does not allege that Beck was involved in the assault in any way. He says only that he contacted Beck after it happened and asked Beck to investigate Nelson and have Nelson arrested for assaulting the plaintiff. Beck cannot be held liable for an assault that he had no knowledge of and in which he took no part. See Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021); Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). The plaintiff also has no constitutional right to an investigation or prosecution of another person. See Wright v. Runyan, 774 F. App'x 311, 312 (7th Cir. 2019) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Beck cannot be held liable for not responding to the plaintiff's requests to investigate or prosecute Nelson for the alleged assault. Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428 (7th Cir. 2017). The court will dismiss defendant Beck.

The court will allow the plaintiff to proceed on an Eighth Amendment claim of excessive force against Sergeant Nelson, Lieutenant Collins and Officers Thill, Martin and Bloomberg. He also may proceed on a First Amendment claim of retaliation against Nelson. He may not proceed on any other claims or against any other defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Lieutenant Griperton, Unit Manager Kirst and Security Director Jeremy Beck.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Sergeant Nelson, Lieutenant Collins and Correctional Officers Martin, Thill and Bloomberg. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$349.19** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 20th day of November, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.